UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
OLD POINT INTERNATIONAL CORPORATION,

*Plaintiff,*

-- against --

BRUCE HILL and CHARLES HALE,

*Defendants.*
--------------------------------------------------------------X

Case No:

Plaintiff Old Point International Corporation, by its attorneys, Judd Burstein, P.C., complaining of the Defendants, alleges as follows:

<strong><u>JURISDICTION AND VENUE</u></strong>

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 2201.

2.      Venue lies in this District pursuant to (a) 28 U.S.C. § 1391(a)(2) in that the parties' fiduciary relationship -- the key issue in this case -- was created as a result of, and during the course of, substantial meetings in New York County, and (b) 28 U.S.C. § 1391(a)(3).

<strong><u>THE PARTIES</u></strong>

3.      Plaintiff Old Point International Corporation ("Old Point" or "Plaintiff") is a corporation organized under the laws of the British Virgin Islands, with a principal place of business and its registered office in the British Virgin Islands.

4.      Defendant Bruce Hill ("Hill") is a citizen of the State of Massachusetts. Subsequent to Plaintiff making the investments at issue in this case, Hill was convicted of perjury in the United States District Court for the District of Massachusetts.

5.      Defendant Charles Hale is a citizen of the State of New York.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### The History and Nature of the Parties' Relationship

6.      In or around December 2001, Defendants approached Old Point through its investment advisor, Cavallo Capital ("Cavallo"), in an effort to secure an arrangement pursuant to which Defendants would seek out investment opportunities for Old Point and then, if Old Point availed itself of an opportunity, manage Old Point's investment.

7.      Defendants then made a December 2001 presentation to Cavallo, as Old Point's representative, at Cavallo's Madison Avenue offices in New York County.

8.      Over the next two months, there were additional presentations, conversations and negotiations between Defendants and Old Point's representatives, all of which took place in New York County.

9.      In or around February 2002, Old Point and Defendants reached an agreement pursuant to which, as proposed by Defendants, Defendants would recommend investment opportunities for Old Point and then manage those investments which Old Point made as a result of Defendants' recommendations.  In return, Defendants would receive (a) office space, (b) salaries, and (c) between the two of them, a performance fee ("carry") equal to 13% of all net income of the companies they managed and any net revenue from the sale of any of such companies.

10.      Initially, the parties conducted their business through a company subsequently named Divestiture Capital Growth ("DivestCap"), which would receive a carry from Old Point for the investments recommended by Defendants.  The ownership of DivestCap was structured so that Defendants' percentage ownership of that company would net them their 13% carry on all

2

companies that they managed for Old Point. It was at all times understood that Old Point, and Old Point alone, would be the sole owner of the investments.

11.    In 2003, Defendants identified another investment opportunity for Old Point: a Bankruptcy Court purchase, pursuant to 11 U.S.C. § 363, of the assets of a company, Fortel, Inc. ("Fortel"). Fortel designed and sold software systems throughout the world. Old Point contributed 100% of the Fortel purchase price, with no financial contribution from Defendants.

12.    Given that Fortel sold its products both domestically and internationally, Defendants informed Old Point that, after consulting with their tax counsel, there was a much more tax-effective (primarily for Defendants and, incidentally, to Plaintiff), and entirely legal, structure by which Defendants could manage Old Point's investment in purchasing the Fortel Assets:

> a.    Two companies would be created: (i) Glenridge Commercial, Inc. ("GCI"), a BVI corporation beneficially owned by Old Point, and (ii) SightLine Systems Corporation ("Sightline"), a Delaware Subchapter S corporation wholly owned by Defendants;

> b.    GCI, as Old Point's investment vehicle, would own all of the Fortel assets;

> c.    GCI would license its products and intellectual property to Sightline as the exclusive North American distributor of the Fortel products; and

> d.    Defendants would manage the sale of GCI's products throughout the rest of the world, with the income from those sales going directly to GCI.

13.    Based upon Defendants' advice and assurances, many of which were given at meetings in New York County, Old Point agreed to this structure. Nonetheless, it was always agreed that, as between Old Point and Defendants, the creation of the two companies – one of them nominally owned by Defendants – did not change the parties' underlying agreement that Old Point was the 100% owner of the Fortel assets, and that Defendants were only managers and would be compensated as such.

3

14.     It was thus agreed between the parties that, notwithstanding the corporate form, GCI and Sightline were to be treated as one overall enterprise ("Sightline Enterprise"), beneficially owned by Old Point and managed by Defendants. Defendants also successfully negotiated an increase from their normal 13% carry to a carry of 19.5% after a preferred return to Old Point. The parties' agreement is confirmed, *inter alia*, by both numerous written communications and their course of conduct over the ensuing years – including the dividing of the total combined annual net profits of both GCI and Sightline according to a 80.5/19.5 split.

**The Events Giving Rise to this Action**

15.     In or around 2006, Defendants and Old Point agreed that it would be in Old Point's best interest to sell the Sightline Enterprise.

16.     In or around June 2007, a software company expressed interest in making such a purchase.

17.     As of July 2007, the prospective purchaser made a preliminary offer of $42 million to purchase the Sightline Enterprise. Subsequently, in August 2007, Plaintiff was advised that the Board of Directors of the prospective purchaser approved the purchase subject to due diligence, preparation of appropriate contract documents, and agreement on ancillary terms.

18.     In the event of a $42 million sale of the Sightline Enterprise, Defendants would be entitled to a payment of approximately $8,000,000.

19.     However, Defendants have informed Old Point that they will use their nominal ownership of Sightline – granted to them on the basis of their recommendation that such ownership was the most tax-effective way to manage the Sightline Enterprise – to seek to prevent a sale of the Sightline Enterprise unless Defendants are paid $20,000,000. In other words, Defendants are insisting upon almost 50% of the proposed sale price.

4

20.    In response to this demand by Defendants, Old Point made clear that, notwithstanding Defendants' nominal ownership of Sightline, Old Point and Defendants had always agreed that Old Point was the sole owner of the entire Sightline Enterprise, and that Defendants were mere managers.  Hence, Old Point informed Defendants that they owed a fiduciary duty to Old Point not to interfere with the proposed sale.

21.    Defendants responded by falsely contending that they were the true owners of Sightline, and that they owed no fiduciary duty to Old Point, because there was only a contractual relationship between GCI and Sightline.

## FIRST CLAIM FOR RELIEF

22.    Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

23.    Plaintiff contends that, notwithstanding Defendants' nominal ownership of Sightline, the entire Sightline Enterprise is beneficially owned by Plaintiff, and that Defendants are fiduciaries retained to manage Plaintiff's investment.

24.    Defendants contend that they are the true owners of Sightline, as opposed to mere managers of Plaintiff's investment, and therefore do not owe any fiduciary duty to Plaintiff.

25.    A justiciable controversy has arisen with respect to whether (a) Plaintiff is the beneficial owner of the entire Sightline Enterprise, and (b) Defendants owe a fiduciary duty to Plaintiff.

26.    Plaintiff has no adequate remedy at law.

27.    The equities favor Plaintiff.

28.     Pursuant to 28 U.S.C. § 2201, Plaintiff is therefore entitled to a judicial declaration that (a) it is the beneficial owner of the Sightline Enterprise, and (b) Defendants owe a fiduciary duty to Plaintiff.

## SECOND CLAIM FOR RELIEF

29.     Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

30.     Plaintiff contends that because it is the beneficial owner of the entire Sightline Enterprise (a) it has sole discretion as to whether to sell the Sightline Enterprise, and (b) Defendants have a fiduciary duty not to interfere with and frustrate such a sale.

31.     Defendants contend that they are the true owners of Sightline, and therefore have the right to frustrate and prevent the sale of the Sightline Enterprise, unless they receive a price they want for their nominal ownership of Sightline.

32.     A justiciable controversy has arisen with respect to whether (a) Plaintiff has sole discretion as to whether to sell the Sightline Enterprise, and (b) Defendants have a fiduciary duty not to interfere with and frustrate such a sale.

33.     Plaintiff has no adequate remedy at law.

34.     The equities favor Plaintiff.

35.     Pursuant to 28 U.S.C. § 2201, Plaintiff is therefore entitled to a judicial declaration that (a) Plaintiff has sole discretion as to whether to sell the Sightline Enterprise, and (b) Defendants have a fiduciary duty not to interfere with and frustrate such a sale.

## THIRD CLAIM FOR RELIEF

36.     Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

6

37.    Plaintiff contends that Defendants have violated their fiduciary duties to Plaintiff, and have therefore forfeited their right to what would have otherwise been their right to a carry of 19.5% with respect to the Sightline Enterprise.

38.    On information and belief, Defendants contend that, in all events, forfeiture is unavailable to Plaintiff because they are not Plaintiff's fiduciaries.

39.    A justiciable controversy has arisen with respect to whether Defendants have forfeited their right to what would have otherwise been their right to a 19.5% carry with respect to the Sightline Enterprise.

40.    Plaintiff has no adequate remedy at law.

41.    The equities favor Plaintiff.

42.    Pursuant to 28 U.S.C. § 2201, Plaintiff is therefore entitled to a judicial declaration that Defendants have forfeited their right to what would have otherwise been their right to a 19.5% carry with respect to the Sightline Enterprise.

## FOURTH CLAIM FOR RELIEF

43.    Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

44.    Defendants owe a fiduciary duty to Plaintiff.

45.    Defendants promised that they would hold nominal ownership of Sightline only for tax reasons, and that Plaintiff would remain the beneficial owner of the entire Sightline Enterprise.

46.    In reliance upon this promise, Plaintiff transferred some of its ownership rights in the Sightline Enterprise to Defendants by permitting Defendants to own Sightline.

47.    If Defendants are permitted to maintain their ownership of Sightline, they will be unjustly enriched.

48.    A constructive trust on all of the shares of Sightline should therefore be imposed for the benefit of Plaintiff.

## FIFTH CLAIM FOR RELIEF

49.    · Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

50.    Plaintiff is entitled to an accounting of the Sightline Enterprise.

**WHEREFORE,** Plaintiff demands judgment as follows:

A.    On Plaintiff's First Claim for Relief, a judicial declaration that (a) Plaintiff is the beneficial owner of the Sightline Enterprise, and (b) Defendants owe a fiduciary duty to Plaintiff;

B.    On Plaintiff's Second Claim for Relief, a judicial declaration that (a) Plaintiff has sole discretion as to whether to sell the Sightline Enterprise, and (b) Defendants have a fiduciary duty not to interfere with and frustrate such a sale;

C.    On Plaintiff's Third Claim for Relief, a judicial declaration that Defendants have forfeited what would have otherwise been their right to a 19.5% carry with respect to the Sightline Enterprise;

D.    On Plaintiff's Fourth Claim for Relief, imposition of a constructive trust for the benefit of Plaintiff on all of the shares of Sightline;

E.    On Plaintiff's Fifth Claim for Relief, an accounting of the Sightline Enterprise; and

8

F.     An Order and Judgment granting such other and further relief as is deemed just and appropriate by the Court.

Dated: New York, New York
          September 19, 2007

                                              JUDD BURSTEIN, P.C.


                                              By_____
                                                    Judd Burstein (JB-9585)
                                              1790 Broadway, Suite 1501
                                              New York, New York 10019
                                              T: (212) 974-2400
                                              F: (212) 974-2944