UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| OLD POINT INTERNATIONAL CORPORATION, : | |
| : | 07 CV 8178 (GEL) (MHD) |
| *Plaintiff*, : | |
| : | ECF Case |
| -against- : | Electronically Filed |
| : | |
| BRUCE HILL and CHARLES HALE, : | |
| : | |
| *Defendants*. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Susan L. Saltzstein (SS1907)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Telecopier: (212) 735-2000

-and-

James R. Carroll (admitted pro hac vice)
Nicholas I. Leitzes (NL1756)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108-3107
Telephone: (617) 573-4800
Telecopier: (617) 573-4822

Counsel for Defendants
Bruce G. Hill and Charles C. Hale

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

STATEMENT OF FACTS .................................................................................................................. 2

    1.    Allegations of the Complaint .................................................................................. 2

    2.    The Stock Purchase Agreements ............................................................................. 3

ARGUMENT ....................................................................................................................................... 4

I.    PLAINTIFF IS BARRED FROM OFFERING PAROL EVIDENCE TO CONTRADICT THE PLAIN MEANING OF THE STOCK PURCHASE AGREEMENTS ........................ 4

CONCLUSION .................................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

Carrow v. Arnold, Civ. No. 182-K, 2006 WL 3289582 (Del. Ch. Oct. 31, 2006)..........................4, 5

Chrin v. Ibrix Inc., Civ. No. 20587, 2005 WL 2810599 (Del. Ch. Oct. 19, 2005) ..........................7

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991)..............................................1

County of Suffolk v. Alcorn, 266 F.3d 131 (2d Cir. 2001)...............................................................5

Dujardin v. Liberty Media Corp., 359 F. Supp. 2d 337 (S.D.N.Y. 2005) ........................................5

Eagle Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228 (Del. 1997) ..............................5

H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129 (Del. Ch. 2003) .................................................7

Highlands Ins. Group, Inc. v. Halliburton Co.,
   Civ. No. 17971, 2001 WL 287485 (Del. Ch. Mar. 21, 2001) ....................................................7

Holloway v. King,
   361 F. Supp. 2d 351 (S.D.N.Y. 2005), aff'd, 161 Fed. Appx. 122 (2d Cir. 2005).....................5

I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759 (2d Cir. 1991) ..........1

Interim Healthcare, Inc. v. Spherion Corp., 884 A.2d 513 (Del. Super. 2005)...............................4

Lesavoy v. Lane, 304 F. Supp. 2d 520 (S.D.N.Y. 2004) ..................................................................4

Moloney v. Weingarten, 118 A.D.2d 836, 500 N.Y.S.2d 320 (2d Dep't 1986)...............................5

Rhodes v. Silkroad Equity, LLC,
   Civ. No. 2133-VCN, 2007 WL 2058736 (Del. Ch. Jul. 11, 2007) ........................................ 5-8

Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133 (2d Cir. 2004)......................................................4

Waldman ex rel. Elliott Waldman Pension Trust v. Riedinger, 423 F.3d 145 (2d Cir. 2005) .........4

Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc., 111 F. Supp. 2d 450 (S.D.N.Y. 2000)....6

Defendants Bruce G. Hill and Charles C. Hale, by their undersigned attorneys, submit this memorandum of law in support of their motion to dismiss the complaint (the "Complaint" or "Compl.") filed by Plaintiff Old Point International Corporation ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This dispute centers on two written, fully integrated stock purchase agreements (the "Stock Purchase Agreements"), which expressly provide that Plaintiff conveyed "legal and valid title" to SightLine Systems Corporation ("Sightline") to Messrs. Hill and Hale, "for Buyer's own account, as principal," and that the agreements "supersede all prior agreements and understandings." See sections 3(b), 4(b), and 5(e) of each Stock Purchase Agreement, which are annexed to the accompanying Declaration of Susan L. Saltzstein ("Saltzstein Decl.") as Exhibits A and B.[1]

Despite selling Sightline to Messrs. Hill and Hale pursuant to these agreements in 2003, Plaintiff now claims that it owns Sightline by virtue of some vague preexisting agreement made between the parties in early February 2002 by which Messrs. Hill and Hale would recommend investments to Plaintiff, manage those investments, and Plaintiff would be sole

---

[1] In deciding a motion to dismiss, a court may consider documents that were not attached to or referenced in the complaint where there is "undisputed notice to plaintiffs of their content" and they are "integral to plaintiff's claim." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991) (considering stock purchase agreement on motion to dismiss, holding "plaintiff should not so easily be allowed to escape the consequences of its own failure" to reference the agreement and other documents in the complaint). See also I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir. 1991) ("We [] decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference.").

owners of each of those investments. Compl. ¶¶ 9, 13-14. Plaintiff's claims all hinge on the meritless legal proposition that the controlling legal documents may simply be ignored.

Plaintiff alleges that because it owns the company and Messrs. Hill and Hale are only managers, they owe Plaintiff a fiduciary duty. Plaintiff's Complaint contains no allegations other than Plaintiff's purported ownership that could support any fiduciary duty. Plaintiff alleges that Messrs. Hill and Hale breached their fiduciary duties by acting to impede a sale of Sightline, and that various declaratory relief is therefore warranted, including a declaration that Plaintiff owns Sightline, is entitled to an accounting of and imposition of a constructive trust on the company and has sole discretion to sell it, and that Messrs. Hill and Hale have forfeited any rights to proceeds from a sale. But the fact that Messrs. Hill and Hale own Sightline pursuant to the Stock Purchase Agreements demolishes all of Plaintiff's claims. See Saltzstein Decl. Exs. A, B. Plaintiff's Complaint should be dismissed with prejudice in its entirety.

## STATEMENT OF FACTS

### 1. Allegations of the Complaint

In late 2001 and early 2002, Messrs. Hill and Hale and Plaintiff negotiated terms by which Messrs. Hill and Hale would recommend investment opportunities to Plaintiff and manage those investments. Compl. ¶¶ 6-9. Plaintiff alleges that the parties came to an agreement in or around February 2002 pursuant to which the parties "understood" that Plaintiff would own all the investments going forward. Compl. ¶ 10.

One of the investments recommended by Messrs. Hill and Hale to Plaintiff was software company Fortel, Inc. Compl. ¶¶ 11-12. Upon purchasing Fortel, the parties agreed to form two companies: Glenridge Commercial Inc. ("GCI") and Sightline. Compl. ¶ 12. Sightline distributes and develops software which is based, in large part, on intellectual property owned by

2

GCI.  Compl. ¶ 12.  While Plaintiff's Complaint does not explain the relationship between Plaintiff and GCI, presumably GCI is an affiliate of or owned by Plaintiff.  See Compl. ¶ 14.

Plaintiff alleges that, as a result of the parties' purported agreement in February 2002, "notwithstanding the corporate form" of Sightline and GCI, the companies are "beneficially owned" by Plaintiff.  Compl. ¶ 14.  Plaintiff alleges it was "always agreed that" Plaintiff was the 100-percent owner of both GCI and Sightline.  Compl. ¶ 13.

In or around 2006, Plaintiff and Messrs. Hill and Hale all agreed to attempt to sell both Sightline and GCI.  Compl. ¶ 15.  Plaintiff alleges that a prospective purchaser made a preliminary offer of $42 million for the two companies, but that Messrs. Hill and Hale informed Plaintiff that they would use their "nominal" ownership of Sightline to "seek to prevent a sale" unless they are paid "a price they want" for Sightline.  Compl. ¶¶ 17-19, 31.

Plaintiff now contends that Messrs. Hill and Hale are fiduciaries of Plaintiff solely by virtue of Plaintiff's purported ownership of Sightline, and that their alleged conduct is in breach of their fiduciary duties.  Compl. ¶¶ 20, 23-25, 30.

### 2. The Stock Purchase Agreements

Messrs. Hill and Hale purchased Sightline from Plaintiff in 2003 pursuant to the two Stock Purchase Agreements, which contain identical provisions.  See Saltzstein Decl. Exs. A, B.  Both provide at section 3(b) that "[Hill/Hale] will acquire legal and valid title to the Shares, free and clear of any and all liens, claims or encumbrances of whatever nature or description."

The agreements also provide at section 4(b) that "Buyer is acquiring the Shares for Buyer's own account, as principal, for investment purposes only, and not with any intention to resell, distribute or otherwise dispose of the Shares, in whole or in part."

Moreover, the Stock Purchase Agreements contain integration clauses at section 5(e) that state:

>This agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersede all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof, and is not intended to confer upon any other person not a party hereto any rights or remedies hereunder other than the Parties and their respective successors and permitted assigns.

## ARGUMENT

Plaintiff's entire case hinges on the mistaken legal premise that controlling contracts may simply be ignored. Yet courts "are not required to accept as true the legal conclusions or unwarranted deductions of fact drawn by the non-moving party" when considering a motion to dismiss. Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 137 (2d Cir. 2004). See also Lesavoy v. Lane, 304 F. Supp. 2d 520, 527 (S.D.N.Y. 2004).

I.  **PLAINTIFF IS BARRED FROM OFFERING PAROL EVIDENCE TO CONTRADICT THE PLAIN MEANING OF THE STOCK PURCHASE AGREEMENTS**

The parol evidence rule provides that "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as to the complete and accurate integration of that contract, evidence . . . of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." Interim Healthcare, Inc. v. Spherion Corp., 884 A.2d 513, 546 (Del. Super. 2005) (citations omitted) (enforcing stock purchase agreement).[2]  See also Carrow v. Arnold, Civ. No. 182-K, 2006 WL 3289582, *4-5

---

[2] The Stock Purchase Agreements are governed by and construed in accordance with Delaware law. See Saltzstein Decl. Ex. A at § 5(h); Ex. B at § 5(h). Regardless, the law as to contract interpretation and the parol evidence rule are essentially the same under either New York or Delaware law. See Waldman ex rel. Elliott Waldman Pension Trust v. Riedinger, 423 F.3d 145, 149 (2d Cir. 2005) ("Whether we apply New York or Delaware law, the same principles of contract interpretation guide our construction of the Agreement. '[I]f a contract is unambiguous on its face, the parties' rights under such a contract should be determined solely by the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that

*(cont'd)*

(Del. Ch. Oct. 31, 2006) (granting declaratory relief as to ownership under real estate sales agreement); Holloway v. King, 361 F. Supp. 2d 351, 358 (S.D.N.Y. 2005), aff'd, 161 Fed. Appx. 122 (2d Cir. 2005) (dismissing breach of contract claim, holding that under New York law "[p]arol evidence to vary, contradict, or supplement the terms of a fully integrated agreement is not admissible"); Moloney v. Weingarten, 118 A.D.2d 836, 500 N.Y.S.2d 320 (2d Dep't 1986) (dismissing breach of contract claim and denying constructive trust, holding that plaintiff may not introduce parol evidence of an oral agreement to split proceeds from the lease of an apartment, where a subsequent agreement transferred sole ownership of the apartment to defendant).

An integration clause creates a "presumption of integration." Rhodes v. Silkroad Equity, LLC, Civ. No. 2133-VCN, 2007 WL 2058736, *6 (Del. Ch. Jul. 11, 2007) (citing Carrow, 2006 WL 3289582, at *5). See also Dujardin v. Liberty Media Corp., 359 F. Supp. 2d 337, 357 (S.D.N.Y. 2005) (dismissing breach of contract claim under New York law, holding "the reception of evidence of the alleged promise . . . would contradict the integration clause providing that the Merger Agreements contain the entire agreement between the parties"). In Rhodes, plaintiffs alleged that defendants had breached oral promises prior to the execution of a stock purchase agreement that defendants would repay loans to the corporation guaranteed by plaintiffs. 2007 WL 2058736 at *7. The court dismissed the contract claim, holding that all obligations running from defendants to plaintiffs pertaining to the corporation were governed solely by the agreement, by virtue of the following integration clause:

---
*(cont'd from previous page)*
were not expressed.'") (quoting County of Suffolk v. Alcorn, 266 F.3d 131, 138 (2d Cir. 2001); Eagle Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232 (Del. 1997)).

> This Agreement, the related schedules, and the other documents delivered by the parties in connection with this Agreement, together with the Confidentiality Agreement, <u>contain the complete agreement between the parties with respect to the transactions contemplated by this Agreement and supersede all prior agreements and understandings</u> between the parties to this Agreement.

Id. at *6 (emphasis added).[3]

Here, the Stock Purchase Agreements provide integration clauses nearly identical to those in Rhodes:

> This agreement <u>constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersede all prior agreements and understandings</u>, both written and oral, among the parties with respect to the subject matter hereof . . . .

Saltzstein Decl. Ex. A § 5(e); Ex. B § 5(e) (emphasis added). The only substantive difference between the two integration clauses is that the one in Rhodes incorporates by reference several materials ("[t]his Agreement, the related schedules, and the other documents delivered by the parties in connection with this Agreement, together with the Confidentiality Agreement"), while the integration clauses in the Stock Purchase Agreements are limited solely -- and unambiguously -- to the agreements themselves. See Rhodes, 2007 WL 2058736 at *6; Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc., 111 F. Supp. 2d 450, 454 (S.D.N.Y. 2000) (dismissing breach of contract claim under New York law, holding "It is well settled that extrinsic and parol evidence is not admissible to create an ambiguity where none exists") (citations omitted).

---

[3] The court also rejected plaintiff's argument that the oral agreements were made to fraudulently induce plaintiffs into entering the stock purchase agreement and were thus immune from the parol evidence rule, holding "the problem with the Plaintiffs' attempt to invoke the 'fraud' or 'bad faith' exceptions to the integration clause at hand is that no allegations of fraudulent or bad faith conduct have been sufficiently alleged in Complaint." Rhodes, 2007 WL 2058736 at *7.

6

As in Rhodes, the court in Chrin v. Ibrix Inc., Civ. No. 20587, 2005 WL 2810599, *5 (Del. Ch. Oct. 19, 2005) enforced the terms of an integration clause to a stock purchase agreement, thus dismissing plaintiff's claim that it was owed a greater ownership percentage of stock pursuant to a prior written agreement. Notwithstanding that the integration clause incorporated exhibits and other provisions of the agreement incorporated external documents, the court excluded the prior agreement, holding that "parol evidence cannot be used to interpret a contract that facially is unambiguous." Id. at *5 (citing Highlands Ins. Group, Inc. v. Halliburton Co., Civ. No. 17971, 2001 WL 287485, *8 (Del. Ch. Mar. 21, 2001) (granting motion for judgment on the pleadings)). See also H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129, 141 (Del. Ch. 2003 ) (dismissing contract claims, holding "the effect of this [integration] clause is to exclude from the Purchase Agreement any representation or warranty not expressly set forth or referred to therein. The PPM is not expressly referred to anywhere in the Purchase Agreement. Therefore, it cannot serve as a basis for a claim that the defendants breached the Purchase Agreement").

Here, Plaintiff alleges that, because of an arrangement made between the parties in February 2002 providing that Plaintiff would own all investments recommended and managed by Messrs. Hill and Hale, all subsequent contracts between the parties -- even those explicitly granting ownership of an investment to Messrs. Hill and Hale -- would be ineffective. See, e.g., Compl. ¶¶ 9-10. Thus, Plaintiff argues that "notwithstanding the corporate form" of Sightline, the company is "beneficially owned" by Plaintiff. Compl. ¶ 14.

However, Plaintiff's claims fail as a matter of law. The Stock Purchase Agreements conveyed "legal and valid title" of all of the shares of Sightline to Messrs. Hill and Hale, "for Buyer's own account, as principal." Saltzstein Decl. Ex A §§ 3(b), 4(b); Ex B §§ 3(b),

7

4(b). The integration clause in each agreement unambiguously demonstrates the parties' intent to "supersede all prior agreements and understandings." Saltzstein Decl. Ex. A § 5(e); Ex. B § 5(e). Plaintiff is therefore barred from claiming that its alleged <u>prior</u> agreement with Messrs. Hill and Hale should supersede the Stock Purchase Agreements. <u>See</u> <u>Rhodes,</u> 2007 WL 2058736 at *7 ("nothing is alleged in the Complaint to suggest that the integration clause does not properly bar certain oral commitments the Defendants made prior to execution" of the stock purchase agreement).

## **CONCLUSION**

For all the foregoing reasons, Defendant's Motion to Dismiss should be granted in all respects, and the Complaint should be dismissed with prejudice.

Dated: New York, New York
October 5, 2007

Respectfully submitted,

/s/ Susan L. Saltzstein
Susan L. Saltzstein (SS1907)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Telecopier: (212) 735-2000

-and-

James R. Carroll (admitted pro hac vice)
Nicholas I. Leitzes (NL1756)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108-3107
Telephone: (617) 573-4800
Telecopier: (617) 573-4822

Counsel for Defendants
Bruce G. Hill and Charles C. Hale