# Exhibit A

Confidential

# STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT (this "**Agreement**") is made and entered into as of May__, 2003 between Oldpoint International Corporation, a British Virgin Islands corporation ("**Seller**"), and Charles C. Hale, an individual residing at the address set forth upon the signature page hereto ("**Buyer**"). Buyer and Seller are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**."

## RECITALS

A.  Seller desires to sell all of Seller's right, title and interest in and to the Shares (as defined below) for the consideration and on the terms set forth in this Agreement.

B.  Buyer desires to purchase all of Seller's right, title and interest in and to the Shares for the consideration and on the terms set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises herein made, the reliance by each Party hereon and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Parties, intending to be legally bound, agree as follows:

1.  Purchase. Buyer shall purchase, and Seller shall sell, convey and otherwise transfer, five (5) shares of common stock (the "**Shares**") of SightLine Systems Corporation, a Delaware corporation (the "**Company**") in return for the consideration set forth below. Seller agrees that the Shares represent fifty percent (50%) of the outstanding number of shares of common stock of the Company.

2.  Purchase Price; Assumption of Liabilities. Buyer shall deliver, at the closing of the transactions contemplated hereby, a note payable to the order of Seller, in the principal amount of $10,000, and otherwise in the form attached hereto as Exhibit A. Buyer further agrees to assume, perform and discharge, each and every one of Seller's obligations to the Company and to indemnify Seller from and against any and all liability arising from such obligations.

3.  Representations and Warranties by Seller. Seller hereby represents and warrants to Buyer that:

    (a)  The Shares are duly authorized, validly issued, fully paid and nonassessable and free of preemptive rights.

    (b)  Seller has all right, power and legal authority to execute and deliver this Agreement, and to carry out and perform its obligations hereunder including, without limitation, the sale and delivery of the Shares to Buyer pursuant to this Agreement. Upon such transfer, Buyer will acquire legal and valid title to the Shares, free and clear of any and all liens, claims or encumbrances of whatever nature or description. No options or warrants to acquire any shares of the Company's common stock are outstanding and the Company is not required, by contract or otherwise, to issue any such options or warrants. No notes or other instruments are outstanding that are convertible into or exchangeable for any shares of the Company's common stock and the Company is not required, by contract or otherwise, to issue any such instruments.

Confidential

(c)     This Agreement has been duly and validly executed and delivered and, assuming the due execution of this Agreement by Buyer, constitutes the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, except to the extent that its enforceability may be subject to applicable bankruptcy, insolvency, reorganization and similar laws affecting the enforceability of creditors' rights generally and general equitable principles.

(d)     The total number of outstanding number of shares of common stock of the Company is ten (10), which represents the only class of equity securities of the Company.

4.     Representations and Warranties by Buyers. The Buyer hereby represents and warrants to the Company that:

(a)     This Agreement has been duly and validly executed and delivered and, assuming the due execution of this Agreement by Seller, constitutes the legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, except to the extent that its enforceability may be subject to applicable bankruptcy, insolvency, reorganization and similar laws affecting the enforceability of creditors' rights generally and general equitable principles.

(b)     Buyer is acquiring the Shares for Buyer's own account, as principal, for investment purposes only, and not with any intention to resell, distribute or otherwise dispose of the Shares, in whole or in part. Buyer understands that the Purchased Stock has not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or under any applicable state securities or blue sky laws or the laws of any jurisdiction, and cannot be resold unless it is so registered or unless an exemption from registration is available.

5.     General Provisions.

(a)     Subject to applicable law, this Agreement may be modified or amended only by execution of an instrument in writing signed on behalf of Buyer and Seller.

(b)     No waiver by either Party of any default, misrepresentation, or breach of warranty or agreement hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or agreement hereunder or affect in any way any rights arising by virtue of any prior or subsequent occurrence.

(c)     All notices, requests, demands, claims, and other communications hereunder shall be in writing. Any notice, request, demand, claim or other communication hereunder shall be deemed duly delivered four business days after it is sent by registered or certified mail, return receipt requested, postage prepaid, or one business day after it is sent for next business day delivery via a reputable nationwide overnight courier service, in each case to be intended recipient as set forth below:

(a)     if to Buyer to:

Charles C. Hale
185 E. 85th Street, Apt. 4D
New York, NY  10028
charles@divestcap.com

(b)     if to Seller to:

Oldpoint International Corporation
C/o Geneva Management Group

2

Confidential

8 PICTET DE ROCHEMONT 1207 GENEVA
Switzerland

Attention: Shlomo Meichor
shlomo@gaiainv.com

Either Party may give any notice, request, demand, claim or other communication hereunder using any other means (including personal delivery, expedited courier, messenger service, telecopy, telex, ordinary mail or electronic mail), but no such notice, request, demand, claim, or other communication shall be deemed to have been duly given unless and until it actually is received by the party for whom it is intended. Either Party may change the address to which notices, requests, demands, claims and other communications hereunder are to be delivered by giving the other Party notice in the manner herein set forth.

(d) This Agreement may be executed in two counterparts, all of which shall be considered one and the same agreement and shall become effective when both counterparts have been signed by each of the Parties and delivered (including delivery by facsimile) to the other Party, it being understood that both Parties need not sign the same counterpart.

(e) This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersede all prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof, and are not intended to confer upon any other person not a party hereto any rights or remedies hereunder other than the Parties and their respective successors and permitted assigns.

(f) If any provision of this Agreement is determined by a court of competent jurisdiction to be, or becomes, invalid, unenforceable or illegal, such provision shall be (a) modified to be made valid, enforceable and legal in such a manner as to best effectuate the intent of the Parties on the date hereof, or (b) deemed eliminated where such modification is not practicable; the remainder of this Agreement shall remain in effect in accordance with its terms as modified by such modification or deletion.

(g) Except as otherwise provided herein, any and all remedies herein expressly conferred upon a Party will be deemed cumulative with and not exclusive of any other remedy conferred hereby, or by law or equity upon such Party, and the exercise by a Party of any one remedy will not preclude the exercise of any other remedy. The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. It is accordingly agreed that the Parties shall be entitled to seek an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof in any court of the United States or any state or country having jurisdiction, this being in addition to any other remedy to which they are entitled at law or in equity.

(h) This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of law thereof.

(i) The Parties agree that they have been represented by counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding or rule of construction providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document.

Confidential

IN WITNESS WHEREOF, the Parties have hereby executed this Stock Purchase Agreement as of the date first above written.

_[signature]_
Charles C. Hale

OLDPOINT INTERNATIONAL CORPORATION

By _[signature]_
Name: Kenneth L. Henderson
Title: Attorney-in-Fact

4

## PROMISSORY NOTE

$10,000.00                                                                                   May 1, 2003


        For value received, Charles C. Hale, an individual residing at 185 East 85th Street, Apartment 4D, New York, NY [Zip Code] ("Maker"), hereby promises to pay to the order of Oldpoint International Corporation, a company incorporated and operating as an International Business Company under the laws of the British Virgin Islands ("Payee"), in lawful money of the United States of America, the aggregate principal sum of ten thousand dollars ($10,000), which principal sum shall be paid no later than June 30, 2004 (the "Payment Date"). Interest on the unpaid principal balance of this Promissory Note shall be paid to Payee on the Payment Date. Such interest shall accrue from the date of this Promissory Note until paid in full at the interest rate of 5% per annum.

        This Promissory Note may be prepaid at any time in whole or from time to time in part, in each case without premium or penalty, but with interest on the amount prepaid to the date of prepayment.

        All payments of principal and interest hereunder shall be made without setoff, deduction or counterclaim. No delay or failure on the part of Payee in exercising any of its options, powers or rights, nor any partial or single exercise of its options, powers or rights shall constitute a waiver thereof or of any other option, power or right, and no waiver on the part of Payee of any of its options, powers or rights shall constitute a waiver of any other option, power or right. Maker hereby waives presentment of payment, protest, and all notices or demands in connection with the delivery, acceptance, performance, default or endorsement of this Promissory Note. Acceptance by Payee of less than the full amount due and payable hereunder shall in no way limit the right of Payee to require full payment of all sums due and payable hereunder in accordance with the terms hereof. Maker shall pay all costs and expenses, including reasonable attorneys' fees, in connection with the enforcement or collection of this Promissory Note. No term or provision contained herein may be modified, amended or waived except by written agreement or consent signed by the party to be bound thereby.

        The rights and remedies of the Payee expressed herein are cumulative and not exclusive of any rights and remedies otherwise available.

        This Promissory Note shall be binding upon the Maker and its successors and permitted assigns and shall inure to the benefit of the Payee and its successors and assigns, except that the Maker may not delegate any of its obligations hereunder without the prior written consent of the Payee. The term "Payee," as used herein, shall also include any endorsee, assignee or any other holder of this Promissory Note.

        If this Promissory Note is lost, stolen, mutilated or otherwise destroyed, Maker shall execute and deliver to the Payee a new promissory note containing the same terms, and in the same form, as this Promissory Note. In such event, Maker may require the Payee to deliver

99990-00001/973530v1

to the Maker an affidavit of lost instrument and indemnity acceptable to Payee in respect thereof as a condition to the delivery of any such new note.

If it shall be found that any interest due hereunder shall violate applicable laws governing usury, the applicable rate of interest due hereunder shall be reduced to the maximum permitted rate of interest under such law.

This Promissory Note shall be governed by and construed and enforced in accordance with the internal laws of the State of New York without regard to the principles of conflicts of law thereof. Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, borough of Manhattan, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is improper. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof to such party at the address in effect for notices to it under this Promissory Note and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law. Maker hereby irrevocably waives the right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, in any manner connected with this Promissory Note or any transaction hereunder.

_____
Charles C. Hale

Promissory Note

−2−