# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
OLD POINT INTERNATIONAL CORPORATION,

                   *Plaintiff,*

      -- against --

BRUCE HILL and CHARLES HALE,

                   *Defendants.*
-------------------------------------------------------------X

Case No: _____

07 CIV 8178

JUDGE LYNCH

RECEIVED
SEP 19 2007
U.S.D.C. S.D.N.Y.
CASHIERS

        Plaintiff Old Point International Corporation, by its attorneys, Judd Burstein, P.C., complaining of the Defendants, alleges as follows:

## JURISDICTION AND VENUE

        1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 2201.

        2.     Venue lies in this District pursuant to (a) 28 U.S.C. § 1391(a)(2) in that the parties' fiduciary relationship -- the key issue in this case -- was created as a result of, and during the course of, substantial meetings in New York County, and (b) 28 U.S.C. § 1391(a)(3).

## THE PARTIES

        3.     Plaintiff Old Point International Corporation ("Old Point" or "Plaintiff") is a corporation organized under the laws of the British Virgin Islands, with a principal place of business and its registered office in the British Virgin Islands.

        4.     Defendant Bruce Hill ("Hill") is a citizen of the State of Massachusetts. Subsequent to Plaintiff making the investments at issue in this case, Hill was convicted of perjury in the United States District Court for the District of Massachusetts.

        5.     Defendant Charles Hale is a citizen of the State of New York.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**The History and Nature of the Parties' Relationship**

6.     In or around December 2001, Defendants approached Old Point through its investment advisor, Cavallo Capital ("Cavallo"), in an effort to secure an arrangement pursuant to which Defendants would seek out investment opportunities for Old Point and then, if Old Point availed itself of an opportunity, manage Old Point's investment.

7.     Defendants then made a December 2001 presentation to Cavallo, as Old Point's representative, at Cavallo's Madison Avenue offices in New York County.

8.     Over the next two months, there were additional presentations, conversations and negotiations between Defendants and Old Point's representatives, all of which took place in New York County.

9.     In or around February 2002, Old Point and Defendants reached an agreement pursuant to which, as proposed by Defendants, Defendants would recommend investment opportunities for Old Point and then manage those investments which Old Point made as a result of Defendants' recommendations.  In return, Defendants would receive (a) office space, (b) salaries, and (c) between the two of them, a performance fee ("carry") equal to 13% of all net income of the companies they managed and any net revenue from the sale of any of such companies.

10.     Initially, the parties conducted their business through a company subsequently named Divestiture Capital Growth ("DivestCap"), which would receive a carry from Old Point for the investments recommended by Defendants.  The ownership of DivestCap was structured so that Defendants' percentage ownership of that company would net them their 13% carry on all

companies that they managed for Old Point. It was at all times understood that Old Point, and Old Point alone, would be the sole owner of the investments.

11.    In 2003, Defendants identified another investment opportunity for Old Point: a Bankruptcy Court purchase, pursuant to 11 U.S.C. § 363, of the assets of a company, Fortel, Inc. ("Fortel"). Fortel designed and sold software systems throughout the world. Old Point contributed 100% of the Fortel purchase price, with no financial contribution from Defendants.

12.    Given that Fortel sold its products both domestically and internationally, Defendants informed Old Point that, after consulting with their tax counsel, there was a much more tax-effective (primarily for Defendants and, incidentally, to Plaintiff), and entirely legal, structure by which Defendants could manage Old Point's investment in purchasing the Fortel Assets:

      a.    Two companies would be created: (i) Glenridge Commercial, Inc. ("GCI"), a BVI corporation beneficially owned by Old Point, and (ii) SightLine Systems Corporation ("Sightline"), a Delaware Subchapter S corporation wholly owned by Defendants;

      b.    GCI, as Old Point's investment vehicle, would own all of the Fortel assets;

      c.    GCI would license its products and intellectual property to Sightline as the exclusive North American distributor of the Fortel products; and

      d.    Defendants would manage the sale of GCI's products throughout the rest of the world, with the income from those sales going directly to GCI.

13.    Based upon Defendants' advice and assurances, many of which were given at meetings in New York County, Old Point agreed to this structure. Nonetheless, it was always agreed that, as between Old Point and Defendants, the creation of the two companies – one of them nominally owned by Defendants – did not change the parties' underlying agreement that Old Point was the 100% owner of the Fortel assets, and that Defendants were only managers and would be compensated as such.

3

14.    It was thus agreed between the parties that, notwithstanding the corporate form, GCI and Sightline were to be treated as one overall enterprise ("Sightline Enterprise"), beneficially owned by Old Point and managed by Defendants. Defendants also successfully negotiated an increase from their normal 13% carry to a carry of 19.5% after a preferred return to Old Point. The parties' agreement is confirmed, *inter alia*, by both numerous written communications and their course of conduct over the ensuing years – including the dividing of the total combined annual net profits of both GCI and Sightline according to a 80.5/19.5 split.

**The Events Giving Rise to this Action**

15.    In or around 2006, Defendants and Old Point agreed that it would be in Old Point's best interest to sell the Sightline Enterprise.

16.    In or around June 2007, a software company expressed interest in making such a purchase.

17.    As of July 2007, the prospective purchaser made a preliminary offer of $42 million to purchase the Sightline Enterprise. Subsequently, in August 2007, Plaintiff was advised that the Board of Directors of the prospective purchaser approved the purchase subject to due diligence, preparation of appropriate contract documents, and agreement on ancillary terms.

18.    In the event of a $42 million sale of the Sightline Enterprise, Defendants would be entitled to a payment of approximately $8,000,000.

19.    However, Defendants have informed Old Point that they will use their nominal ownership of Sightline – granted to them on the basis of their recommendation that such ownership was the most tax-effective way to manage the Sightline Enterprise – to seek to prevent a sale of the Sightline Enterprise unless Defendants are paid $20,000,000. In other words, Defendants are insisting upon almost 50% of the proposed sale price.

4

20.    In response to this demand by Defendants, Old Point made clear that, notwithstanding Defendants' nominal ownership of Sightline, Old Point and Defendants had always agreed that Old Point was the sole owner of the entire Sightline Enterprise, and that Defendants were mere managers.  Hence, Old Point informed Defendants that they owed a fiduciary duty to Old Point not to interfere with the proposed sale.

21.    Defendants responded by falsely contending that they were the true owners of Sightline, and that they owed no fiduciary duty to Old Point, because there was only a contractual relationship between GCI and Sightline.

## FIRST CLAIM FOR RELIEF

22.    Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

23.    Plaintiff contends that, notwithstanding Defendants' nominal ownership of Sightline, the entire Sightline Enterprise is beneficially owned by Plaintiff, and that Defendants are fiduciaries retained to manage Plaintiff's investment.

24.    Defendants contend that they are the true owners of Sightline, as opposed to mere managers of Plaintiff's investment, and therefore do not owe any fiduciary duty to Plaintiff.

25.    A justiciable controversy has arisen with respect to whether (a) Plaintiff is the beneficial owner of the entire Sightline Enterprise, and (b) Defendants owe a fiduciary duty to Plaintiff.

26.    Plaintiff has no adequate remedy at law.

27.    The equities favor Plaintiff.

5

28.    Pursuant to 28 U.S.C. § 2201, Plaintiff is therefore entitled to a judicial declaration that (a) it is the beneficial owner of the Sightline Enterprise, and (b) Defendants owe a fiduciary duty to Plaintiff.

## SECOND CLAIM FOR RELIEF

29.    Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

30.    Plaintiff contends that because it is the beneficial owner of the entire Sightline Enterprise (a) it has sole discretion as to whether to sell the Sightline Enterprise, and (b) Defendants have a fiduciary duty not to interfere with and frustrate such a sale.

31.    Defendants contend that they are the true owners of Sightline, and therefore have the right to frustrate and prevent the sale of the Sightline Enterprise, unless they receive a price they want for their nominal ownership of Sightline.

32.    A justiciable controversy has arisen with respect to whether (a) Plaintiff has sole discretion as to whether to sell the Sightline Enterprise, and (b) Defendants have a fiduciary duty not to interfere with and frustrate such a sale.

33.    Plaintiff has no adequate remedy at law.

34.    The equities favor Plaintiff.

35.    Pursuant to 28 U.S.C. § 2201, Plaintiff is therefore entitled to a judicial declaration that (a) Plaintiff has sole discretion as to whether to sell the Sightline Enterprise, and (b) Defendants have a fiduciary duty not to interfere with and frustrate such a sale.

## THIRD CLAIM FOR RELIEF

36.    Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

6

37.    Plaintiff contends that Defendants have violated their fiduciary duties to Plaintiff, and have therefore forfeited their right to what would have otherwise been their right to a carry of 19.5% with respect to the Sightline Enterprise.

38.    On information and belief, Defendants contend that, in all events, forfeiture is unavailable to Plaintiff because they are not Plaintiff's fiduciaries.

39.    A justiciable controversy has arisen with respect to whether Defendants have forfeited their right to what would have otherwise been their right to a 19.5% carry with respect to the Sightline Enterprise.

40.    Plaintiff has no adequate remedy at law.

41.    The equities favor Plaintiff.

42.    Pursuant to 28 U.S.C. § 2201, Plaintiff is therefore entitled to a judicial declaration that Defendants have forfeited their right to what would have otherwise been their right to a 19.5% carry with respect to the Sightline Enterprise.

**FOURTH CLAIM FOR RELIEF**

43.    Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

44.    Defendants owe a fiduciary duty to Plaintiff.

45.    Defendants promised that they would hold nominal ownership of Sightline only for tax reasons, and that Plaintiff would remain the beneficial owner of the entire Sightline Enterprise.

46.    In reliance upon this promise, Plaintiff transferred some of its ownership rights in the Sightline Enterprise to Defendants by permitting Defendants to own Sightline.

7

47.    If Defendants are permitted to maintain their ownership of Sightline, they will be unjustly enriched.

48.    A constructive trust on all of the shares of Sightline should therefore be imposed for the benefit of Plaintiff.

## FIFTH CLAIM FOR RELIEF

49.    Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

50.    Plaintiff is entitled to an accounting of the Sightline Enterprise.

**WHEREFORE**, Plaintiff demands judgment as follows:

A.    On Plaintiff's First Claim for Relief, a judicial declaration that (a) Plaintiff is the beneficial owner of the Sightline Enterprise, and (b) Defendants owe a fiduciary duty to Plaintiff;

B.    On Plaintiff's Second Claim for Relief, a judicial declaration that (a) Plaintiff has sole discretion as to whether to sell the Sightline Enterprise, and (b) Defendants have a fiduciary duty not to interfere with and frustrate such a sale;

C.    On Plaintiff's Third Claim for Relief, a judicial declaration that Defendants have forfeited what would have otherwise been their right to a 19.5% carry with respect to the Sightline Enterprise;

D.    On Plaintiff's Fourth Claim for Relief, imposition of a constructive trust for the benefit of Plaintiff on all of the shares of Sightline;

E.    On Plaintiff's Fifth Claim for Relief, an accounting of the Sightline Enterprise; and

8

F.     An Order and Judgment granting such other and further relief as is deemed just

and appropriate by the Court.

Dated: New York, New York
       September 19, 2007

JUDD BURSTEIN, P.C.

By_____
        Judd Burstein (JB-9585)
    1790 Broadway, Suite 1501
    New York, New York 10019
    T: (212) 974-2400
    F: (212) 974-2944

9

# EXHIBIT B

Judd Burstein

---

| | |
|---|---|
| **From:** | Judd Burstein |
| **Sent:** | Monday, October 01, 2007 8:35 PM |
| **To:** | Carroll, James |
| **Subject:** | RE: Old Point International Corporation Litigation |

Jim--

Nice to meet you today.

In the hope of avoiding unnecessary arguments and surprise, could you let me know (a) whether you have any evidence that the $10,000 Notes were ever executed and delivered to Old Point, and (b) whether the Notes were paid on or before 6/30/2004.  My client's records do not reflect receipt of the Notes or payment, but I don't want to make any such argument if you credible evidence to the contrary.

Also, when can you get me the information on the acquisition?

Judd Burstein
Judd Burstein, P.C.
1790 Broadway
New York, New York 10019
(212) 974-2400 (O)
(212) 974-2944 (F)
(917) 687-2981 (Cell)
-----Original Message-----
From: Carroll, James [mailto:JCARROLL@skadden.com]
Sent: Wednesday, September 26, 2007 9:58 AM
To: Judd Burstein; Jeremy Attie
Subject: RE: Old Point International Corporation Litigation

Thanks for the courtesy.  As I indicated on my call with Jeremy a few minutes ago, we agree to maintain status quo through the hearing on Monday.

-----Original Message-----
From: Judd Burstein [mailto:JBurstein@BURLAW.COM]
Sent: Tuesday, September 25, 2007 5:59 PM
To: Carroll, James; Jeremy Attie; Judd Burstein
Subject: RE: Old Point International Corporation Litigation

Mr. Carroll:

So long as you confirm that your client will maintain the status quo until Monday, i have no objection to moving the appearance date.  Please confirm

Sent from my handheld
Judd Burstein
Judd Burstein, P.C.
!1790 Broadway
New York, New York 10019
(212) 974-2400 (Office)
(917) 687-2981 (Cell)
(212) 974-2944 (Fax)

-----Original Message-----
From: Carroll, James <JCARROLL@skadden.com>
Sent: Tuesday, September 25, 2007 11:31 AM
To: Jeremy Attie <JAttie@BURLAW.COM>; Judd Burstein <JBurstein@BURLAW.COM>
Subject: RE: Old Point International Corporation Litigation

Dear Mr. Burstein and Mr. Attie,

Thanks for your letter. I tried calling you to discuss but you were both unavailable.

# EXHIBIT C

## Judd Burstein

**From:**    Judd Burstein
**Sent:**    Wednesday, October 03, 2007 10:05 AM
**To:**    Carroll, James
**Cc:**    Peter B. Schalk
**Subject:** FW: Activity in Case 1:07-cv-08178-GEL Old Point International Corporation v. Hill et al Order

Jim—

This schedule set forth in the Court's order is wrong, as we agreed that my answering papers would be due on 10/10. Can we agree on that without having to go back to the Court?

On another note, if you have no proof on delivery and/or payment of the Notes, doesn't It make far more sense just to go through discovery and then make sj motions. As a practical matter, I think that is where we end up in any event because your motion is really in the nature of a summary judgment motion based upon an affirmative defense. We can argue over merits, but the fact remains that so long as I can articulate **some** theory that answers your agreement , the Second Circuit case law makes it crystal clear that a sj motion should not be granted before the close of discovery. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) ("'Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.'")   Of course, the likelihood of you prevailing on a 12(b)(6) motion all but disappears if, as I think may be the case, the Notes were never delivered and/or paid.

My point here is not to say that I will win the case. Or even that I will get to a trial. Rather, it just seems that we are both going to spend a lot of time and client monies on motion practice that will likely not resolve the case, and that it makes more sense to recognize this fact and just get the discovery done. At that point, you can make your sj motion without any procedural hurdles.

Judd Burstein
Judd Burstein, P.C.
1790 Broadway
New York, New York 10019
(212) 974-2400 (O)
(212) 974-2944 (F)
(917) 687-2981 (C)

**From:** NYSD_ECF_Pool@nysd.uscourts.gov [mailto:NYSD_ECF_Pool@nysd.uscourts.gov]
**Sent:** Wednesday, October 03, 2007 9:08 AM
**To:** deadmail@nysd.uscourts.gov
**Subject:** Activity in Case 1:07-cv-08178-GEL Old Point International Corporation v. Hill et al Order

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. District Court

### United States District Court for the Southern District of New York

10/10/2007

**Notice of Electronic Filing**

The following transaction was entered on 10/3/2007 at 9:07 AM EDT and filed on 10/2/2007
**Case Name:**       Old Point International Corporation v. Hill et al
**Case Number:**     1:07-cv-8178
**Filer:**
**Document Number:** 6

**Docket Text:**
ORDER that plaintiff's motion for a preliminary injunction and temporary restraining order is denied.
RE any moiton to dismiss by defendants: Motion due by 10/5/2007. Responses due by 10/8/2007.
Replies due by 10/15/2007. (Signed by Judge Gerard E. Lynch on 10/1/07) (cd)


**1:07-cv-8178 Notice has been electronically mailed to:**
Judd Burstein jburstein@burlaw.com, alevy@burlaw.com, hyonke@burlaw.com, jattie@burlaw.com,
jdavila@burlaw.com, lott@burlaw.com, lrodgers@burlaw.com, mdeoreo@burlaw.com,
mquinn@burlaw.com, pguzman@burlaw.com, pschalk@burlaw.com

**1:07-cv-8178 Notice has been delivered by other means to:**

James R. Carroll
Skadden, Arps, Slate, Meagher & Flom, L.L.P.
One Beacon Street
Boston, MA 02108


The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=10/3/2007] [FileNumber=3861219-0
] [7cb16d28365dac821c8ec88287e6989dd38eae6622f108a7ac521bafcfdbac47b06
5fa37be6589230c3126aa7159bd295bed4718ca1674401f3e0492cb687212]]

# EXHIBIT D

That is right, subject to client confirmation.

But I also would like to talk to you about the motion to dismiss because, putting aside everything else, if your clients have no compelling documentary proof that they delivered or paid off the note, and my client denies this occurred, how can you prevail on your motion? Remember, the Agreement itself does not transfer stock; it merely obligates Old Point to transfer stock at a later closing, when the Notes are to be delivered. If my client avers that the Notes were never delivered (and the documentary evidence appears to support this claim strongly), the Agreement is meaningless standing alone. Rather, even if stock was transferred, it would not have been transferred pursuant to that Agreement. Rather, we would be in a dispute between the parties as to the oral terms of the transfer. To be sure, you can seek to prove that the written terms, as well as the parties' conduct, reflect the terms of an oral agreement. However, as I am sure you will agree, that issue cannot be resolved through a motion to dismiss. Really, it would be a motion for summary judgment after discovery.

It just seems to me that we are spinning our wheels on a motion to dismiss that even Judge Lynch (not aware of this issue) expressed doubts about you prevailing on completely. Perhaps your clients are committed to making the motion, but doesn't it just make more sense to get to through discovery, at which point you can seek to resolve it through a summary judgment motion?

Judd Burstein
Judd Burstein, P.C.
1790 Broadway
New York, New York 10019
(212) 974-2400 (O)
(212) 974-2944 (F)
(917) 687-2981 (C)
www.burlaw.com

---

**From:** Carroll, James [mailto:JCARROLL@skadden.com]
**Sent:** Thursday, October 04, 2007 1:07 PM
**To:** Judd Burstein
**Subject:** RE: Disclosure

Judd, Sorry for being a bit slow to respond. I've got a tough travel schedule this month. My clients tell me that those notes were indeed paid off and that your clients ought to have records of the payments. Putting aside our differing recollections, what you've outlined makes sense if I understand it correctly: in essence we'll both exchange documents and both undertake not to reach out to the respective counterparties or otherwise interfere with the transactions. I'd want that agreement to last beyond the resolution of the motion to dismiss, but would certainly understand that the agreement did not in any way preclude formal discovery in the litigation. So it'd be fine to serve a subpoena on the counterparty or take its depo at the appropriate time, but it wouldn't be ok (in the absense of further agreement or relief) to have other contacts with the counterparties outside of the discovery process. Is that consistent with what you had in mind? If so, we ought to document it and be precise as to what we are agreeing to exchange. Please let me know at your convenience. Thanks.
Jim

James R. Carroll
Skadden Arps Slate Meagher & Flom
One Beacon Street
Boston, MA 02108
617-573-4801 (p)
617-573-4822 (f)
jcarroll@skadden.com

---

**From:** Judd Burstein [mailto:JBurstein@BURLAW.COM]
**Sent:** Wednesday, October 03, 2007 11:57 AM
**To:** Carroll, James
**Subject:** Disclosure

Jim—

I am in receipt of your two letters of today.

With respect to the first letter, I am consulting with my client. However, we cannot begin to evaluate the proposal until you answer my questions about the delivery and/or payments of the notes. Obviously, if the notes were delivered, your clients have proof of delivery, and if they were paid, your clients would have proof of payment in the form of wire transfer, cancelled checks, etc.

10/10/2007

# EXHIBIT E

**From:** Carroll, James [mailto:JCARROLL@skadden.com]
**Sent:** Thursday, October 04, 2007 1:07 PM
**To:** Judd Burstein
**Subject:** RE: Disclosure

Case 1:07-cv-08178-GEL    Document 11-2    Filed 10/10/2007    Page 19 of 19

Judd, Sorry for being a bit slow to respond. I've got a tough travel schedule this month.  My clients tell me that those notes were indeed paid off and that  your clients ought to have records of the payments. Putting aside our differing recollections, what you've outlined makes sense if I understand it correctly:  in essence we'll both exchange documents and both undertake not to reach out to the respective counterparties or otherwise interfere with the transactions. I'd want that agreement to last beyond the resolution of the motion to dismiss, but would certainly understand that the agreement did not in any way preclude formal discovery in the litigation. So it'd be fine to serve a subpoena on the counterparty or take its depo at the appropriate time, but it wouldn't be ok (in the absence of further agreement or relief) to have other contacts with the counterparties outside of the discovery process.  Is that consistent with what you had in mind? If so, we ought to document it and be precise as to what we are agreeing to exchange. Please let me know at your convenience.  Thanks.
Jim


James R. Carroll
Skadden Arps Slate Meagher & Flom
One Beacon Street
Boston, MA  02108
617-573-4801 (p)
617-573-4822 (f)
jcarroll@skadden.com

---

**From:** Judd Burstein [mailto:JBurstein@BURLAW.COM]
**Sent:** Wednesday, October 03, 2007 11:57 AM
**To:** Carroll, James
**Subject:** Disclosure

Jim—

I am in receipt of your two letters of today.

With respect to the first letter, I am consulting with my client.  However, we cannot begin to evaluate the proposal until you answer my questions about the delivery and/or payments of the notes.  Obviously, if the notes were delivered, your clients have proof of delivery, and if they were paid, your clients would have proof of payment in the form of wire transfer, cancelled checks, etc.

With respect to the second letter, I have a distinct recollection of you explicitly agreeing to provide the documents relating to the acquisition without condition or limitation.  I am sure that Judge Lynch will concur.  I certainly hope that we are not getting off on the wrong foot with respect to taking each other at our word.

Nonetheless. I am prepared to accept all documents concerning the acquisition subject to a confidentiality order, but I cannot agree in advance that I won't go back to Judge Lynch seeking relief.  In other words, we will not seek to interfere with the transaction other than through an application to the Court.  Moreover, the disclosure may give rise to discovery relevant to the case.  Hence, all that I can promise in that regard is that until such time as your motion to dismiss is denied, we will not make inquiry of any third party concerning the acquisition without prior court approval.

Assuming we reach a similar agreement with respect to the buy-out proposal,  we are prepared to make disclosure.

Judd Burstein
Judd Burstein, P.C.
1790 Broadway
New York, New York 10019
(212) 974-2400 (O)
(212) 974-2944 (F)
(917) 687-2981 (C)
www.burlaw.com

---
*************************************************
This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
*************************************************

10/10/2007