UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
OLD POINT INTERNATIONAL CORPORATION,

                *Plaintiff*,

                Index No: 07-CV-08178 (GEL)

      -- against --

BRUCE HILL and CHARLES HALE,        **DECLARATION OF
                                                               SHLOMO MEICHOR**

                *Defendants*.
----------------------------------------------------------------X

        **SHLOMO MEICHOR** hereby declares under penalty of perjury:

        1.     I am the Secretary and a Director of Enright Holding Corp.

        2.     I submit this Declaration in support of Plaintiff Old Point International Corporation's ("Old Point") opposition to Defendants' motion to dismiss the Complaint. The purposes of this Declaration are:

        a.     To authenticate certain documents referred to in the accompanying Declaration of Avi Vigder and in the accompanying Memorandum of Law submitted on behalf of Plaintiff; and

        b.     To provide relevant facts concerning Old Point's Spring 2004 execution of Stock Purchase Agreements ("SPAs") with Defendants.

**A.**     **AUTHENTICATION OF DOCUMENTS**

        3.     Annexed hereto as Exhibit A is a true and accurate copy of June 2, 2003 e-mail correspondence that I had with Bruce Hill.

        4.     Annexed hereto as Exhibit B is a true and accurate copy of June 11, 2003 e-mail correspondence that I had with Charles Hale.

5.  Annexed hereto as Exhibit C is a true and accurate copy of an e-mail sent to me by Charles Hale on June 26, 2003.

6.  Annexed hereto as Exhibit D is a true and accurate copy of e-mail correspondence I had with Bruce Hill and Kenneth Henderson.

7.  Annexed hereto as Exhibit E is a true and accurate copy of e-mail correspondence I had with Charles Hale on June 20 and 21, 2004.

8.  Annexed hereto as Exhibit F is a true and accurate copy of an e-mail sent to me by Charles Hale on June 23, 2004.

9.  Annexed hereto as Exhibit G is a true and accurate copy of an e-mail sent to me by Charles Hale on December 30, 2004.

B.  **THE FACTS SURROUNDING THE EXECUTION OF THE SPAS**

10. As demonstrated by Exhibits A through C and G hereto, in my capacity as a Director of Enright Holding Corp., I worked with Messrs. Hill and Hale on banking and financial matters relating to Old Point's purchase of the assets of Fortel, Inc. ("Fortel"). I also worked with them in connection with at least one other investment that they managed for Old Point.

11. In the period immediately following Old Point's acquisition of the Fortel assets, the parties proceeded as they did with another investment – Summit Technology – secured and then managed by Defendants. That is, the investment was managed by DivestCap as sub-advisor to Enright Holding Corp.'s United States sub-advisor.

12. However, shortly thereafter, Defendants proposed to Mr. Vigder and me a different structure which they contended would be more tax effective and entirely legal. In essence, as detailed in the accompanying Declaration of Avi Vigder:

a. Two companies would be created: (i) Glenridge Commercial, Inc. ("GCI"), a BVI corporation beneficially owned by Old Point, and (ii) SightLine Systems Corporation ("SSC"), a Delaware Subchapter S corporation wholly owned by Defendants;

b. GCI, as Old Point's investment vehicle, would continue to own all of the Fortel assets;

c. GCI would sell its products and intellectual property to SSC as the exclusive North American distributor of the Fortel products; and

d. Defendants would manage the sale of GCI's products throughout the rest of the world, with the income from those sales going directly to GCI.

13. In response, Mr. Vigder and I deferred to Defendants as our fiduciaries with respect to the best way to structure the investment. Indeed, rather than use Old Point's lawyers at Bryan Cave, Defendants separately retained the law firm of Gray Cary (now DLA Piper) to advise on tax issues.

14. Consistent with the parties' past custom of dealing on the basis of oral agreements, the structure suggested by Defendants, and to which Mr. Vigder and I had agreed, was never memorialized in signed contract.[1] Indeed, there was no need to do so because, regardless of the formal structure of the investment, the parties operated as though GCI and SSC were one entity merely managed by Defendants.

15. Moreover, during the period from June of 2003 through June of 2004 (and indeed thereafter), I engaged in numerous telephone conversations with both Mr. Hill and Mr. Hale in which they explicitly acknowledged (or necessarily implied) that (i) their record ownership of SSC was a

---

[1] Significantly, one of the e-mails found in Exhibit D hereto reflects that Mr. Hill sent drafts of the SPAs to me in August of 2003. The fact that the agreements were never executed at that time confirms that the parties were unconcerned with the formal documentation of what was plainly only a paper record of ownership.

part of the tax structure blessed by their lawyers, but not reflective of the parties' underlying agreement, (ii) Old Point was the beneficial owner of SSC, and/or (iii) they were merely managers of the investment for Old Point. In other words, the parties agreed that, notwithstanding the corporate form, GCI and SSC were to be treated as one overall enterprise ("Sightline Enterprise"), beneficially owned by Old Point and managed by Defendants.

16. Put simply, we never bothered to document the Sightline Enterprise structure because we all knew that it did not represent the actual working agreement of the parties. Indeed, if this were not so, it is inconceivable that Mr. Hill and Mr. Hale would not have insisted upon executing a written agreement because, if the SPAs are read literally, they were receiving unrestricted ownership of a major portion of Old Point's $300,000 Fortel investment for just $20,000.

17. In the Spring of 2004, we entered into discussions with BSL, a Japanese company, to purchase the Sightline Enterprise for a price in excess of $40 million. As reflected by Exhibit D hereto, I had a telephone conversation with Mr. Hill on April 28, 2004, regarding this proposed transaction. During this telephone call Mr. Hill told me that he needed to secure SPAs signed by Old Point **only** because BSL would want to see them in connection with investigating the Sightline Enterprise's tax structure and also because there might be an audit some day. He again explicitly acknowledged that the SPAs did not reflect the true agreement of the parties, but merely created a paper record justifying the tax structure.

18. Mistakenly believing in Mr. Hill's honesty (he had not yet been indicted for fraud) and in light of our course of conduct to date, I relied upon his representation about the limited need for the SPAs. As a result, after consultation with Mr. Vigder, I directed Kenneth Henderson to sign the SPAs on behalf of Old Point. (Exhibit D hereto) In retrospect, I now understand that Mr. Hill

defrauded me into directing Mr. Henderson to execute the SPAs so that he could later claim that he and Mr. Hale were the true owners of SSC and were not limited to their agreed-upon 19.5% share of the proceeds of a sale of the entire Sightline Enterprise.

19. In this regard, it is important to note that Exhibit D also reflects that in April 2004, I asked for signed copies of the promissory notes referred to in the SPAs so that I could have in file a full set of documents. Plainly, if the SPAs really reflected the parties' true agreement, it makes no sense that Mr. Vigder and I would have failed to secure the promised consideration for the transfer of the shares before I authorized Mr. Henderson to sign the SPAs.

20. Notwithstanding my April of 2004 request of Mr. Henderson that he sign the SPAs, Exhibit E hereto – an e-mail from Mr. Hale to me asking for signed copies of the SPAs – demonstrates that, as of June 23, 2004, the SPAs remained unsigned. As demonstrated by the fax headers of the signature pages of the SPAs appended to Defendants' motion to dismiss, it was only after this June 23, 2004 e-mail that, pursuant to my direction after consultation with Mr. Vigder, Mr. Henderson signed the SPAs on behalf of Old Point, and the SPAs were transmitted to Defendants.

21. Yet, even at this point, just 9 days before they were due, the notes had not been delivered by Defendants. (*See* Exhibit F hereto). Again, if the SPAs really reflected the parties' true agreement, it makes no sense that Mr. Vigder and I would have failed to secure the consideration promised for the transfer of the shares before the SPAs were transmitted to Defendants.

22. Had Mr. Vigder and/or I known that Mr. Hill and Mr. Hale were intending to rely upon the SPAs to deny that they were only managers of the Sightline Enterprise and also claim that they were entitled to more than 19.5% of the proceeds of a Sightline Enterprise sale, Mr. Vigder and I would never have authorized Mr. Henderson to execute the SPAs for at least the following reasons:

5

a. Given (i) that the parties had been operating to date pursuant to the agreement that Defendants would receive 65% of DivestCap's 30% carry on the Sightline Enterprise (*i.e.*, 19.5% to them), and (ii) that there was a possible $40 plus million dollar sale of the Sightline Enterprise on the table, no sane person would actually have transferred 100% of SSC for a mere $20,000; and

b. The $20,000 alleged sale price for the SSC stock also makes no sense even when considered in the context of Old Point's original $300,000 purchase of the Fortel assets. Mr. Vigder and I would never have authorized the transfer of ownership of a company with the exclusive North American distribution rights to SightLine products in the United States, for just 6.6% of the total amount of money it had invested in the Fortel assets.

**WHEREFORE**, your Declarant prays for an Order denying Defendants' motion to dismiss the Complaint.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 10 day of October, 2007, in Bucharest, Romania.

_____
SHLOMO MEICHOR

6