UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
OLD POINT INTERNATIONAL            :
CORPORATION,                       :
                                   :   07 CV 8178 (GEL) (MHD)
      *Plaintiff*,              :
                                   :   ECF Case
  -against-                       :   Electronically Filed
                                   :
BRUCE HILL and CHARLES HALE,       :
                                   :
      *Defendants*.             :
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM OF LAW IN
# FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Susan L. Saltzstein (SS1907)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Telecopier: (212) 735-2000

-and-

James R. Carroll (admitted pro hac vice)
Nicholas I. Leitzes (NL1756)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108-3107
Telephone: (617) 573-4800
Telecopier: (617) 573-4822

Counsel for Defendants
Bruce G. Hill and Charles C. Hale

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................................1

ARGUMENT........................................................................................................................................2

I.     PLAINTIFF'S "FAILURE OF CONSIDERATION" ARGUMENT IS WITHOUT
MERIT FOR SEVERAL REASONS ......................................................................................2

     A.     Delivery Of The Stock Purchase Agreements Was Not A Condition Precedent
To Effectiveness Of The Contracts..............................................................................2

     B.     Even If Delivery Of The Promissory Notes Was A Condition Precedent, It Was
A Condition Precedent To Performance, The Failure Of Which Does Not Void
A Contract....................................................................................................................4

     C.     Plaintiff Cannot Dispute That Defendants Furnished Partial Consideration By
Assuming Sightline's Liabilities, Thereby Defeating Any Argument That The
SPAs Are Void.............................................................................................................5

II.     DEFENDANTS MAY RELY UPON THE SPAS IN THE CONTEXT OF THIS
MOTION TO DISMISS ..........................................................................................................6

III.     PLAINTIFF'S FRAUDULENT INDUCEMENT ARGUMENT FAILS AS A
MATTER OF LAW .................................................................................................................7

IV.     THE PARTIES' ALLEGED SUBSEQUENT CONDUCT CANNOT ALTER THE
TERMS OF THE STOCK PURCHASE AGREEMENTS .....................................................9

CONCLUSION...................................................................................................................................11

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

AES P.R., L.P. v. Alstom Power, Inc., 429 F. Supp. 2d 713 (D. Del. 2006) ..................................3

Bohlen Indus. of N. Am., Inc. v. Flint Oil & Gas, Inc.,
   106 A.D.2d 909, 483 N.Y.S.2d 529 (4th Dep't 1984) ............................................................ 3, 4

Broadwall Am., Inc. v. Braum Will-El LLC,
   32 A.D.3d 748, 821 N.Y.S.2d 190 (1st Dep't 2006)......................................................................4

Carrow v. Arnold, Civ. No. 182-K, 2006 WL 3289582 (Del. Ch. Oct. 31, 2006) ....................... 2, 8

Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd.,
   387 F. Supp. 2d 378 (S.D.N.Y. 2005).........................................................................................8

Cont'l Ins. Co. v. Rutledge & Co., Inc., 750 A.2d 1219 (Del. Ch. 2000) .........................................9

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir.1991)........................................... 6, 7

De Cecchis v. Evers, 174 A.2d 463 (Del. Super. 1961) ................................................................ 10

DeMarie v. Neff, No. Civ. A. 2077, 2005 WL 89403 (Del. Ch. Jan. 12, 2005)...............................4

Donahue v. Uno Rests., LLC, No. 3:06-CV-53, 2006 WL 1373094 (N.D.N.Y. May 16, 2006) ......7

Engle v. Oney, Civ. A. No. 1249, 1989 WL 44045 (Del. Ch. Apr. 25, 1989) .................................5

Fitzgerald v. Citigroup Inc.,
   No. 03 Civ. 4305, 2007 WL 582965 (S.D.N.Y. Feb. 23, 2007) ..................................................7

GMAC Mortgage Corp of Pa. v. Weisman,
   95 Civ. 9869, 1998 WL 132791 (S.D.N.Y. Mar. 23, 1998) ........................................................4

Honeywell Int'l. Inc. v. Air Prods. & Chems., Inc., 872 A.2d 944 (Del. 2005) ...............................9

Indep. Energy Corp. v. Trigen Energy Corp., 944 F. Supp. 1184 (S.D.N.Y. 1996)........................6

Int'l Fidelity Ins. Co. v. County of Rockland, 98 F. Supp. 2d 400 (S.D.N.Y. 2000)........................3

Kan. City S. v. Grupo TMM, S.A.,
   No. Civ. A. 20518, 2003 WL 22659332 (Del. Ch. Nov. 4, 2003)...............................................3

Lee v. Joseph E. Seagram & Sons, Inc., 413 F. Supp. 693 (S.D.N.Y. 1976) ...................................4

Levine v. Columbia Labs., Inc.,
　　No. 03 Civ. 8943, 2004 WL 1392372 (S.D.N.Y. Jun. 22, 2004)..................................7

Long v. Marubeni Am. Corp., 406 F. Supp. 2d 285 (S.D.N.Y. 2005) ........................ 7, 8

Manley v. Assoc. in Obstetrics and Gynecology, P.A.,
　　Civ. A. 00C-049, 2001 WL 946489 (Del. Super. July 27, 2001) .................................5

Marsa v. Metrobank for Sav., F.S.B., 825 F. Supp. 658 (D.N.J. 1993).............................4

Miller v. Newsweek, Inc., 660 F. Supp. 852 (D. Del. 1987) ......................................... 10

Nolan v. Sam Fox Pub. Co., Inc., 499 F.2d 1394 (2d Cir. 1974) ......................................6

Rhodes v. Silkroad Equity, LLC,
　　No. Civ. A. 2133, 2007 WL 2058736 (Del. Ch. Jul. 11, 2007).............................8, 9

Septembertide Pub., B.V. v. Stein and Day, Inc., 884 F.2d 675 (2d Cir. 1989)................6

Serdaroglu v. Sedaroglu, 209 A.D.2d 600, 621 N.Y.S.2d 806 (2d Dep't 1994)...............4

Torrico v. Int'l Bus. Machs. Corp., 213 F. Supp. 2d 390 (S.D.N.Y. 2002) ......................8

Watts v. Hatzis, Civ. A. No. 89-282, 1990 WL 16963 (D. Del. Feb. 22, 1990)............. 10

Weiss v. Nw. Broad. Inc., 140 F. Supp. 2d 336 (D. Del. 2001) ................................... 4, 5

**PRELIMINARY STATEMENT**

Defendants established in their opening brief that Plaintiff's entire Complaint rests on a faulty premise – namely, that it rather than Messrs. Hill and Hale are the true beneficial owners of Sightline Systems Corporation ("Sightline"). As Defendants showed, that proposition, and the fiduciary duty claims arising from it, are legally barred by two written, fully-integrated stock purchase agreements (the "SPAs") that conveyed 100% ownership of Sightline to the two men. Recognizing that the SPAs are legally dispositive, Plaintiff devotes its entire opposition brief to attacking their enforceability. For the multiple reasons outlined below, those attacks fail.

First, Plaintiff claims that the SPAs do not bar this action because there is no proof that Defendants delivered the promissory notes contemplated thereby.[1] While Plaintiff asserts that such delivery was a "condition precedent" to the creation of a legally binding agreement, the SPAs say no such thing. These agreements are devoid of the language (e.g., "if," "only if," "unless," "subject to") that courts typically cite when finding conditions precedent. In fact, the SPAs provide that they would "become effective when both counterparts [were] signed by each of the Parties and delivered" – a statement that refutes any notion that effectiveness turned on delivery of the notes. Moreover, even if Plaintiff could show that delivery of the notes was a condition, and even if one assumes that this act did not occur, Plaintiff would have (at most) an action for breach of contract, and would not have the right to declare the SPAs void.

Second, Plaintiff contends that the SPAs may not be relied upon for purposes of this motion because they were not explicitly referenced in the Complaint. But that is not the standard here. Courts may consider documents that are neither attached to nor incorporated by reference

---

[1] The notes were paid, but Defendants do not rely on this fact for purposes of their motion.

in a complaint, so long as two elements are met: (i) plaintiff had prior notice of the document and (ii) it forms an integral part of plaintiff's claim. Both conditions are satisfied here.

Third, Plaintiff fares no better with its argument that the SPAs were fraudulently induced. Even if Plaintiff could interpose this argument for the first time in an opposition brief (it cannot), it fails as a matter of law. According to Plaintiff, Defendants orally represented that despite the plain legal import of the SPAs (which transferred ownership of Sightline to Messrs. Hill and Hale), the parties would continue to conduct business as if Sightline were in fact owned by Plaintiff. But under Delaware law, one cannot "rely on oral representations when they are expressly contradicted by the parties' written agreement." Carrow v. Arnold, Civ. No. 182-K, 2006 WL 3289582, at *11 (Del. Ch. Oct. 31, 2006).

Fourth, Plaintiff argues that even if the SPAs were valid and enforceable agreements at one time, they were later modified "by the parties' subsequent conduct" – conduct which allegedly reflects an agreement to transfer ownership of Sightline back to Plaintiff. Plaintiff, however, has failed to advance, as it must, particularized facts from which to conclude that this claimed modification was supported by valid consideration. Indeed, Plaintiff nowhere explains what Messrs. Hill and Hale received in exchange for relinquishing their valuable ownership interests in Sightline.

## ARGUMENT

### I. PLAINTIFF'S "FAILURE OF CONSIDERATION" ARGUMENT IS WITHOUT MERIT FOR SEVERAL REASONS

#### A. Delivery Of The Stock Purchase Agreements Was Not A Condition Precedent To Effectiveness Of The Contracts

Plaintiff argues – years after the SPAs were executed – that they were void from the start because of an alleged failure to "tender[] consideration." (Pl. Opp. 2.) This argument rests heavily on the following statement from Plaintiff's brief: "[T]he SPAs merely obligated Old

Point to transfer the SSC stock . . . only **if** the defendant signatory fulfilled the condition precedent of delivering a promissory note for $10,000." (Id. (emphasis in original).) But that is not what the agreements provide.

The SPAs nowhere state that a transfer obligation would arise "only if" Messrs. Hill and Hale "deliver[ed] a promissory note for $10,000." (Id.) Rather, Section 1 of each agreement provides that "Buyer shall purchase, and Seller shall sell," the Sightline shares in return for the consideration described in Section 2. (See Exs. A & B.)[2] Without more, mutual promises that certain acts "shall" be performed do not create conditions. See, e.g., Int'l Fidelity Ins. Co. v. County of Rockland, 98 F. Supp. 2d 400, 435 (S.D.N.Y. 2000) (statement that surety's obligation under bond "shall arise after" certain events was a promise rather than a condition precedent, where it "contain[ed] none of the unmistakable language such as 'condition precedent' or 'unless and until,'" and "contain[ed] no statement whatsoever that the obligation d[id] not arise in the absence of the actions listed").[3]

This conclusion is further reinforced by language appearing elsewhere in the SPAs – language which, parenthetically, Plaintiff omits from its brief. For instance, Section 5(d) provides that "[t]his Agreement . . . shall become effective when both counterparts have been signed by each of the Parties and delivered . . ." (Ex. A § 5(d); Ex. B § 5(d) (emphasis added).) This express declaration is significant, for where parties state that a contract will be effective upon execution, a later closing contemplated in that same contract is not a condition precedent to

---

[2]  Unless otherwise indicated, all exhibits are from the Declaration of Susan L. Saltzstein, dated October 5, 2007.

[3]  Compare Kan. City S. v. Grupo TMM, S.A., No. Civ. A. 20518, 2003 WL 22659332, at *3 (Del. Ch. Nov. 4, 2003) (finding that the phrase "is necessary" does not give rise to a condition, unlike "[t]he words 'on condition that' or 'provided that' or even the two-letter word 'if,' . . ."), with AES P.R., L.P. v. Alstom Power, Inc., 429 F. Supp. 2d 713, 717 (D. Del. 2006) (holding that contract language, stating "Contractor's corrosion guarantee is conditioned upon operation and maintenance of the system in accordance with the Contractor's Operation and Maintenance manuals," was a condition precedent) (emphasis added).

its effectiveness.  See Bohlen Indus. of N. Am., Inc. v. Flint Oil & Gas, Inc., 106 A.D.2d 909, 910-11, 483 N.Y.S.2d 529, 530-31 (4th Dep't 1984) (rejecting argument that closing was condition precedent to effectiveness of signed settlement agreement, where agreement provided for effectiveness upon execution).  Notably, Plaintiff does not dispute that the SPAs were executed and delivered.

The SPAs also provide that they were being executed "in consideration of the mutual promises herein made."  (Ex. A § 1; Ex. B § 1.)  This language further underscores that the contract terms were reciprocal promises – not conditions.  See, e.g., Lee v. Joseph E. Seagram & Sons, Inc., 413 F. Supp. 693, 700-01 (S.D.N.Y. 1976) (holding that the language, "[i]n consideration of the mutual promises herein contained, it is agreed and covenanted as follows," indicated that contract terms were promises, not conditions); Marsa v. Metrobank for Sav., F.S.B., 825 F. Supp. 658, 664 (D.N.J. 1993) ("[T]he Settlement Agreement contains no language that even arguably makes Marsa's duty . . . a condition precedent . . . .  The contract language sets forth a list of mutual promises and no more.  Indeed, the agreement expressly refers to the obligations undertaken by the parties as 'mutual covenants and agreements.'").[4]

### B. Even If Delivery Of The Promissory Notes Was A Condition Precedent, It Was A Condition Precedent To Performance, The Failure Of Which Does Not Void A Contract

Even if delivery of the notes could be characterized as a condition precedent, failure to satisfy that condition would not render the SPAs void.  For instance, in Weiss, 140 F. Supp. 2d at

---

[4] The cases cited by Plaintiff purporting to hold that shareholder rights vest "only" where consideration has been paid (Pl. Opp. 3-4), do not actually hold this.  See Serdaroglu v. Sedaroglu, 209 A.D.2d 600, 602-03, 621 N.Y.S.2d 806, 808 (2d Dep't 1994) (shareholder certificates need not be delivered to convey ownership when other contractual requirements have been met); Broadwall Am., Inc. v. Braum Will-El LLC, 32 A.D.3d 748, 752, 821 N.Y.S.2d 190, 193-94 (1st Dep't 2006) (conditional options contracts ripen only upon exercise of option); GMAC Mortgage Corp of Pa. v. Weisman, 95 Civ. 9869, 1998 WL 132791, at *9 (S.D.N.Y. Mar. 23, 1998) (involving insurance premiums, not stock); DeMarie v. Neff, No. Civ. A. 2077, 2005 WL 89403, at *4 (Del. Ch. Jan. 12, 2005) (involving real estate purchase agreement, not stock).

341-44, defendant Northwest Broadcasting argued that several financing agreements to which it was a party were "invalidated" and "nullified" due to the failure of a third party to pledge stock as security. The court agreed that the third party's pledge was a condition precedent, because, unlike here, the agreement included a section entitled "Conditions Precedent" and stated explicitly that lender's obligations were "subject to" the pledge. Id. at 341, 344. However, the court held that by characterizing the pledge as a condition precedent for the lender "to engage in the transaction contemplated," the agreement created a condition precedent to performance, not formation of the contract itself, and therefore the financing agreement remained valid. Id.

Here, as in Weiss, there is nothing in the SPAs to suggest that the validity of either was conditioned on delivery of the notes. In fact, as discussed above, the opposite is true. Given this contract language, Defendants' failure to perform an alleged "condition" would give Plaintiff (at most) the right to assert a breach of contract claim – not declare the agreement void. Indeed, the SPAs expressly contemplate that the parties will "enforce specifically the terms and provisions hereof" in a court of law. (See Ex. A § 5(g).) If failures to perform rendered the SPAs void ab initio, as Plaintiff claims, there would have been no need for such a provision.[5]

### C. Plaintiff Cannot Dispute That Defendants Furnished Partial Consideration By Assuming Sightline's Liabilities, Thereby Defeating Any Argument That The SPAs Are Void

In arguing that Defendants failed to "tender[] the consideration required by" the SPAs (Pl. Opp. 2), Plaintiff implies through its silence that the only consideration provided for in these

---

[5] In arguing that failure to meet a condition precedent voids a contract, Plaintiff cites two principal cases. Both are distinguishable. In Engle v. Oney, Civ. A. No. 1249, 1989 WL 44045, at *1 (Del. Ch. Apr. 25, 1989), a case involving a contract for the sale of real estate, there was evidence that the contract was to "become operative and enforceable only if [defendant] was able to secure another residence in which to live." The SPAs, by contrast, do not contain such a link between performance and contract formation. Manley v. Assoc. in Obstetrics and Gynecology, P.A., Civ. A. 00C-049, 2001 WL 946489, at *5 (Del. Super. July 27, 2001), is even less helpful to Plaintiff. There, the court actually found that no condition precedent existed and that the contract was enforceable.

agreements was the delivery of $10,000 promissory notes (id. at 2-5). But again, that is not what the SPAs provide. In Section 2, entitled "Purchase Price; Assumption of Liabilities," Messrs. Hill and Hale also promised to "assume, perform and discharge, each and every one of Seller's obligations to the Company and [] indemnify Seller from and against any and all liability arising from such obligations." (Ex. A § 2; Ex. B § 2.)

Plaintiff does not even purport to argue that Messrs. Hill and Hale failed to assume these liabilities. Consequently, even if you accept Plaintiff's allegations at face value, there could be, at best, a partial failure of consideration under the SPAs. This indisputable fact destroys any effort by Plaintiff to invalidate the SPAs. Where a party has delivered adequate consideration under a contract, as in this case, a partial failure to provide other agreed-upon benefits will not void that contract. See, e.g., Indep. Energy Corp. v. Trigen Energy Corp., 944 F. Supp. 1184, 1199 (S.D.N.Y. 1996) (despite not receiving full payment, plaintiff received adequate consideration for assigning defendant its rights in construction project, in form of conditional promise from defendant to reimburse plaintiff's development expenses and general liability release).[6]

## II. DEFENDANTS MAY RELY UPON THE SPAS IN THE CONTEXT OF THIS MOTION TO DISMISS

Plaintiff argues that "Defendants' reliance upon the SPAs . . . also fails because those agreements are not explicitly referred to in the Complaint." (Pl. Opp. 5-7.) An "explicit reference," of course, is not required. Under established Second Circuit precedent, this Court may consider documents that were neither "attached as exhibits to the complaint [n]or incorporated by reference in it," so long as (i) there was "undisputed notice to plaintiffs of their

---

[6] See also Septembertide Pub., B.V. v. Stein & Day, Inc., 884 F.2d 675, 678-79 (2d Cir. 1989) (failure to pay one third of amounts due under contract did not warrant rescission); Nolan v. Sam Fox Pub. Co., Inc., 499 F.2d 1394 (2d Cir. 1974) (failure to pay 74% of royalties due under contract did not justify rescission).


contents" and (ii) "they were integral to plaintiffs' claim." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991); accord Fitzgerald v. Citigroup Inc., No. 03 Civ. 4305, 2007 WL 582965, at *2 n.2 (S.D.N.Y. Feb. 23, 2007).

Both requirements are easily met here. First, there is no dispute that Plaintiff had prior notice of the SPAs – indeed, it admits signing them in 2004. (See Pl. Opp. 9-10.) And Plaintiff cannot deny that these agreements are integral to its claims. Indeed, Plaintiff concedes in its brief – and alleges in its Complaint – that vesting Defendants with "record ownership" of Sightline was one element of its restructuring plan for the Fortel investment. (Id. at 6; see also Compl. ¶ 12 (alleging that plan called for creation of Sightline, "a Delaware Subchapter S corporation wholly owned by Defendants").) Since Plaintiff has articulated its own view of what "record ownership" means vis-à-vis the parties' relationship, Defendants should be allowed to proffer – and this Court should be allowed to examine – the underlying legal documents.[7]

### III.  PLAINTIFF'S FRAUDULENT INDUCEMENT ARGUMENT FAILS AS A MATTER OF LAW

Plaintiff next argues that even if Messrs. Hill and Hale paid for their shares of Sightline common stock, the underlying SPAs are still invalid because they were "the product of fraudulent inducement on the part of Defendants." (Pl. Opp. 7-12.) This argument fails for either of two independent reasons.

First, Plaintiff – by its own admission (see Pl. Opp. 7 n.5) – does not allege fraudulent inducement in the Complaint, and therefore should not be permitted to raise this newly-minted argument now in its opposition brief. See Long v. Marubeni Am. Corp., 406 F. Supp. 2d 285,

---

[7]  Plaintiff's cases do not require a contrary result. Unlike here, each involved attempts by defendants to invoke releases that did not form a basis for plaintiffs' claims. See Levine v. Columbia Labs., Inc., No. 03 Civ. 8943, 2004 WL 1392372, at *1 (S.D.N.Y. Jun. 22, 2004) (citing agreement in motion to dismiss separate from and unrelated to agreement at issue in complaint); Donahue v. Uno Rests., LLC, No. 3:06-CV-53, 2006 WL 1373094, at *1 (N.D.N.Y. May 16, 2006) ("[A]ny such release does not form the basis of Plaintiff's suit.").

301-02 (S.D.N.Y. 2005) (dismissing claims and "declin[ing] to speculate about" plaintiff's new claims raised in its opposition to motion to dismiss); see also Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd., 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) (dismissing complaint and holding that new allegations "cannot be considered in opposition to a motion to dismiss" – "even assuming these allegations would constitute grounds for relief").[8]

Second, and in any event, Plaintiff has not alleged a necessary element of its fraudulent inducement claim – namely, that there was justifiable reliance on Defendants' so-called misrepresentations of fact. Under Delaware law, "[i]t is unreasonable to rely on oral representations when they are expressly contradicted by the parties' written agreement." Carrow, 2006 WL 3289582, at *11. As Vice Chancellor Noble recently observed in Rhodes v. Silkroad Equity, LLC, No. Civ. A. 2133, 2007 WL 2058736, at *7 (Del. Ch. Jul. 11, 2007), a contrary rule would give parties (like Plaintiff) a foolproof method for sidestepping the parol evidence rule: "'[I]f the only showing required to invoke the fraud exception to the parol evidence rule were inconsistent prior oral statements, such oral statements would often (usually) be admitted, and the exception would swallow the rule.'" Id. (dismissing fraudulent inducement claim where alleged "oral commitments" were at odds with acquisition agreement) (citation omitted).

Here, as in Carrow and Rhodes, Plaintiff is attempting to rely upon prior oral statements that are flatly contradicted by the operative written agreements – the SPAs. According to Plaintiff, Messrs. Hill and Hale orally represented prior to formation that the SPAs "did not represent the actual working agreement of the parties," and "that, notwithstanding the corporate

---

[8] Torrico v. Int'l Bus. Machs. Corp., 213 F. Supp. 2d 390, 400 & n.4 (S.D.N.Y. 2002) (Lynch, J.), upon which Plaintiff relies, is not to the contrary. In that case, unlike this one, the new allegations were permitted only because they were "consistent with the allegations of the complaint," namely, factual allegations simply alleging residence, in further support of an ADA claim. Here, Plaintiff asserts an entirely new set of facts in support of two entirely new legal theories (fraudulent inducement and subsequent modification of the SPAs). Moreover, this Court's holding was based, in part, on its "obligation to construe Torrico's *pro se* complaint liberally." Id.

8

form, GCI and SSC were to be treated as one overall enterprise . . . beneficially owned by Old Point and managed by Defendants." (Pl. Opp. 9.) In other words, Plaintiff claims it was "defrauded" into believing that the SPAs were a sham arrangement, and that the parties would continue to conduct business as if these fully-executed legal documents did not exist. Since these prior oral statements cannot be reconciled with the plain language of the SPAs, Plaintiff's claims of reliance – and, by extension, fraudulent inducement – must fail.

## IV. THE PARTIES' ALLEGED SUBSEQUENT CONDUCT CANNOT ALTER THE TERMS OF THE STOCK PURCHASE AGREEMENTS

Finally, Plaintiff argues that even if the SPAs were valid and enforceable agreements at one time, they were later modified "by the parties' subsequent conduct" – conduct which allegedly reflects an agreement to transfer ownership of Sightline back to Plaintiff. (Pl. Opp. 13-14, 16.) Delaware law, however, is "avers[e] to oral modifications of written agreements." Cont'l Ins. Co. v. Rutledge & Co., Inc., 750 A.2d 1219, 1230 (Del. Ch. 2000).

A party asserting an oral modification must show the intended change with "specificity and directness as to leave no doubt of the intention of the parties to change what they previously solemnized by formal document." Id. (citations omitted); see also Honeywell Int'l. Inc. v. Air Prods. & Chems., Inc., 872 A.2d 944, 955 (Del. 2005) (under New York law, performance under an alleged modification must "admit of no other possible explanation except one pointing directly to the existence of the oral agreement claimed") (citations omitted). Or stated differently, the party's showing must be so particularized as to "rule out the possibility that the asserting party has alleged an oral modification in an attempt to unilaterally alter a pre-existing, but unfavorable agreement." Cont'l Ins. Co., 750 A.2d at 1230.

For purposes of this inquiry, alleged modifications to pre-existing contracts will not be effective unless it is shown that they were "agreed to by all parties and supported by valid

9

consideration." Miller v. Newsweek, Inc., 660 F. Supp. 852, 858 (D. Del. 1987) (citing De Cecchis v. Evers, 174 A.2d 463, 464 (Del. Super. 1961)).  For instance, in Miller, the court held that no modification had occurred, because plaintiff/photographer had not provided consideration to Newsweek in exchange for Newsweek's purported agreement to accept liability for plaintiff's photo negatives.  Id.; see also Watts v. Hatzis, Civ. A. No. 89-282, 1990 WL 16963, at *2 (D. Del. Feb. 22, 1990) (finding that purported modification to lease providing that tenant would repair and maintain windows failed for lack of consideration).

In this case, Plaintiff has failed to advance, as it must, particularized facts from which to conclude that its claimed oral modification was supported by valid consideration.  Plaintiffs' argument presupposes (i) that the SPAs were legally enforceable agreements that validly transferred all of Sightline's outstanding common stock to Messrs. Hill and Hale, and (ii) that both men agreed after acquiring this stock to relinquish their ownership rights in Sightline to the company's prior owners, Old Point, without memorializing the same in a formal writing.  (See id. at 14-21.)  Yet Plaintiff's brief fails to identify the specific consideration that Defendants were given in exchange for giving up this valuable ownership interest – which, according to Plaintiff's own complaint, is potentially worth millions of dollars.  (See Compl. ¶¶ 18-19.)  Under Delaware law, this omission is fatal to Plaintiff's subsequent conduct theory.

**CONCLUSION**

For all the foregoing reasons, Defendant's Motion to Dismiss should be granted in all respects, and the Complaint should be dismissed with prejudice.

Dated: New York, New York
October 15, 2007

Respectfully submitted,

/s/ Susan L. Saltzstein
Susan L. Saltzstein (SS1907)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Telecopier: (212) 735-2000

-and-

James R. Carroll (admitted pro hac vice)
Nicholas I. Leitzes (NL1756)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108-3107
Telephone: (617) 573-4800
Telecopier: (617) 573-4822

Counsel for Defendants
Bruce G. Hill and Charles C. Hale